**STATE of Maine**

v.

**Gilmore A. ROBBINS.**

Supreme Judicial Court of Maine.

May 8, 1979.

Michael Povich, Dist. Atty., Bronson Platner, Asst. Dist. Atty. (orally), Ellsworth, for plaintiff.

Silsby & Silsby by Anthony W. Beardsley (orally), Ellsworth, for defendant.

Before McKUSICK, C. J., and ARCHIBALD, DELAHANTY and GODFREY, JJ.

GODFREY, Justice.

On July 4, 1977, members of the Carter family were enjoying an anniversary party at the home of Herbert Carter, Sr. in Deer Isle, Maine. Certain members of the Robbins family, including defendant Gilmore A. Robbins, crashed the party, refused to leave, and created much disturbance. Robbins was found guilty by a jury of three counts of terrorizing, 17–A M.R.S.A. § 210, and one count of criminal trespass, 17–A M.R.S.A. § 402, all arising out of the incident. He appeals from the judgments of conviction, alleging that he was deprived of a fair trial by the manner in which the jury was selected and that the presiding justice erred in refusing to instruct the jury as requested. We deny the appeal.

Since appellant does not challenge the sufficiency of the evidence, a detailed recit-

al of the facts is unnecessary. Briefly, the testimony established that appellant refused to leave the Carter property after being so ordered first by the owner and then by state trooper James Brassbridge. At various times appellant declared that he was going to kill Herbert Carter, Sr., Everett Carter, and trooper Brassbridge.

During his examination of the array, the presiding justice inquired whether anyone had heard or read of the incident. Eleven members of the array recalled reading about it. Questioned individually by the justice, ten said they had not formed an opinion as to the defendant's guilt or innocence. The venireman who did have an opinion and was dismissed for cause had formed his opinion from contacts on the island, not from what he had read.

Appellant's counsel commented that he would like to know the contents of the articles that had been read because he had been out of the county when they were published. The justice replied that he thought it unnecessary to pursue the matter. Counsel then informed the court that another incident, which occurred several days after the July 4 incident, was also reported in the papers. He stated that the second incident involved the Carters' coming after the Robbinses with guns. The presiding justice then asked the ten members of the venire which newspapers they had read but refused to inquire as to the contents. The justice concluded that further inquiry might be prejudicial because it would provide an opportunity for array members to recall what they had read. He also doubted the relevance of the later incident to bias against the appellant inasmuch as the Robbinses were not the aggressors.

■■ The trial justice has considerable discretion in the conduct of the examination of prospective jurors. *State v. Littlefield,* Me., 374 A.2d 590, 596–98 (1977); *State v. Armstrong,* Me., 344 A.2d 42, 49 (1975). On the facts then known to the presiding justice, it was not an abuse of discretion to deny the defendant's request. The justice had no reason to believe that a prospective juror's knowledge of the second incident could cause bias against the appellant. Thus, as far as the trial justice then knew, the subject matter of defendant's proposed question was not "germane to the jurors' qualifications." Rule 24(a), M.R.Crim.P.

■ After the state rested its case, defense counsel presented to the trial court a compilation of newspaper clippings containing articles published in local newspapers in July of 1977, ten months before trial. With a single exception, all the articles briefly described the July 4 incident and could not be considered prejudicial. The article detailing the second incident stated, contrary to counsel's account, that appellant Robbins had "allegedly threatened" two other persons. Defendant did not move for a mistrial, nor did he explain why he had not presented the articles to the court earlier.

Faced with this belated submission, the presiding justice went forward with the trial, noting that he did not consider the article inflammatory. We find no abuse of discretion on the part of the trial justice. His only practical alternative would have been to declare a mistrial *sua sponte,* a step hardly warranted in the circumstances: the relevant articles had been published ten months before, and the remaining members of the array had stated that they had not formed an opinion as to the guilt or innocence of the defendant.

■ Appellant also claims that the trial court abused its discretion by not conducting individual voir dire of the ten members of the venire who had indicated in their jury questionnaires that they had relatives who were or had been law enforcement officers. The presiding justice asked if because of that relationship, any of the group thought they could not impartially evaluate police and non-police testimony. He received no response. Defendant had requested individual inquiry. While it is preferable that individual voir dire be conducted whenever there is a question of possible juror bias, we cannot say that the trial court abused its discretion here. With one exception, the relatives disclosed by the array members were either not members of

the immediate family or were not recently in law enforcement. The venireperson for whom this was not true was dismissed for cause. In such circumstances, where the source of bias was remote, it was within the province of the trial court to appraise the situation and determine whether individual voir dire was necessary. *State v. Littlefield,* Me., 374 A.2d 590 (1977).

■ Appellant's third contention is that the presiding justice erred in refusing to instruct the jury that if two parties are involved in an affray and only the defendant is charged, he should be found not guilty. There is no precedent in state law for such an instruction. In fact, the statute defining the misdemeanor of affray, 17 M.R.S.A. § 3351, had been repealed by P.L. 1975, ch. 499, § 19. Appellant made no showing that the decision of law enforcement officials to arrest and prosecute the Robbinses and not the Carters was based on an unjustifiable standard such as race, religion, or other arbitrary classification. *Oyler v. Boles,* 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). "That other individuals may not have been criminally prosecuted for the same conduct as the defendant does not violate the equal protection clause of either the federal or state constitution in the absence of a showing of intentional or purposeful discrimination." *State v. Smith,* Me., 389 A.2d 314, 316 (1978).

The entry is:

Appeal denied.

Judgment affirmed.

POMEROY, WERNICK and NICHOLS, JJ., did not sit.